**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DULCINA M. OAKES, | ) | |
| | ) | |
| Plaintiff, | ) | 2:08-cv-1547 |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

**I.      Introduction**

Now pending before the court are cross-motions for summary judgment based on the administrative record: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Document No. 13) with brief in support (Document No. 14), and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 15) with brief in support (Document No. 16).  The motions have been fully briefed and are ripe for resolution.

Plaintiff, Dulcina M. Oakes, (hereinafter "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) to seek review of the October 28, 2008, final determination of the Commissioner of Social Security (hereinafter "Commissioner") which denied her application for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI respectively of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f.  The Commissioner's final determination resulted from the Appeals Council having declined to review the March 27, 2007, decision of the Administrative Law Judge that Plaintiff was not disabled.

II.    **Background**[1]

A.    <u>Facts</u>

Plaintiff was born on March 14, 1979, was 23 years old on her date last insured for DIB

and 28 years old on the date of the ALJ's decision.  As such, she was considered to be a "younger

individual" as defined in 20 C.F.R. § 404.1563(b).  R. 6, at 61.  Plaintiff completed high school

and worked as a cashier and as an aide in a senior citizens center.  R. 6, at 80.

B.    <u>Procedural History</u>

Plaintiff alleges disability, as of January 1, 2002, due to pain in her back, pelvic region,

and left hip following the birth of her two children, and also for having difficulties with memory,

comprehension, and learning.  R. 6, at 72, 75, and 79.  The protective filing date for Plaintiff's

Title XVI application for SSI was September 10, 2003.  R. 6, at 59-60, 68.  The protective filing

date for Plaintiff's Title II application for DIB was September 15, 2003.  R. 6, at 63.  Plaintiff's

Title II claim was denied on January 15, 2004, and her Title XVI claim was denied on January

29, 2004.  R. 6 at 19, 50-53.  On March 19, 2004, Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ").  R. 6 at 54.  On April 13, 2005, without conducting a hearing

and relying on the evidence contained within the record, the ALJ awarded Plaintiff SSI, finding

that Plaintiff satisfied the criteria of Listing 12.05C (mental retardation) as contained in

Appendix 1 of the Social Security Regulations (20 C.F.R., Part 404, Subpart B, Appendix 1).   R.

6-3 at 303-305.

---

[1]Defendant filed the Transcript of the Administrative Proceeding in four parts (Document No. 6, includes part 1, and is 122 pages in total; Document No. 6-2, part 2, 120 pages in total; Document No. 6-3, part 3, 121 pages in total; Document No. 6-4, part 4, 50 pages in total.  The Court will cite to the Transcript by listing the document number and the page (an example being, R. 6-3, at 243, which refers to the Transcript, Document No. 6-3, at page 243).

On June 13, 2005, Plaintiff was informed that based upon the referral of the Office of Quality Assurance and Performance Assessment ("OQA"), and after a review of the written record, the Appeals Council of the Office of Hearings and Appeals determined the ALJ's decision was not supported by substantial evidence. R. 6-3 at 311-316.  That same notification advised Plaintiff that she could send any additional evidence or request an appearance.  *Id.* Plaintiff provided no additional evidence for consideration.  R. 6-3 at 318.  On August 30, 2005, the Appeals Council vacated the April 13, 2005 decision and remanded Plaintiff's case to the ALJ for further development of the evidentiary record, particularly relating to Plaintiff's mental impairment and to address Plaintiff's DIB application.  R. 6-3 at 318-320.

A hearing was conducted on March 8, 2007, before Administrative Law Judge Alma S. deLéon in Pittsburgh.  R. 6 at 31-47.  Plaintiff did not appear at the hearing, but was represented by counsel.  Testimony was heard from Dr. Rudolph Janosko, a board certified psychiatrist as an impartial medical expert, and William H. Reed, Ph.D., an impartial vocational expert.  *Id.*  On March 27, 2007, the Administrative Law Judge ("ALJ") decided that based upon her application for a period of disability and disability benefits, Plaintiff was not disabled under either Title II or Title XVI of the Social Security Act.  R. 6, at 19-30.

## III.    Standard of Review

The Social Security Act limits this Court's review of disability claims to the final decision of the Commissioner. 42 U.S.C. §405(g).  If said decision is supported by substantial evidence, it is conclusive and must be affirmed by the Court.  42 U.S.C. §405(g); *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 431 (3d Cir. 1999).  The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as

3

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 391 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It means more than a mere scintilla of evidence, but less than a preponderance of the evidence. *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). In making this determination, a district court considers and reviews only those findings upon which the ALJ based her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n. 7 (3d Cir. 2001)("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87")(parallel and other citations omitted).

In determining whether a claimant is disabled within the meaning of the Social Security Act in terms of either DIB or SSI benefits, the Commissioner utilizes a five-step sequential evaluation process. 20 C.F.R. §§404.1520, 416.920. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or

her past relevant work, and (5) if not, whether he or she can perform other work. See 42 U.S.C.

§404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000)

(*quoting Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)).

   To qualify for disability benefits under the Social Security Act, a claimant must

demonstrate that there is some "medically determinable basis for an impairment that prevents

him or her from engaging in any substantial gainful activity for a statutory twelve-month period."

*Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §423(d)(1).  This may be done in

two ways:

   (1)   by introducing medical evidence that the claimant is disabled per se because he or
         she suffers from one or more of a number of serious impairments delineated in 20
         C.F.R. Reg. No. 4, Subpt. P, Appdx. 1.  *See Heckler v. Campbell*, 461 U.S. 458
         (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or

   (2)   in the event that claimant suffers from a less severe impairment, by demonstrating
         that he or she is nevertheless unable to engage in "any other kind of substantial
         gainful work which exists in the national economy …" *Campbell*, 461 U.S. at 461
         (*citing* 42 U.S.C. §423(d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the

existence of a medically determinable disability that precludes a plaintiff from returning to his or

her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777.  Once it is shown that

claimant is unable to resume his or her previous employment, the burden shifts to the

Commissioner to prove that, given claimant's mental or physical limitations, age, education and

work experience, he or she is able to perform substantial gainful activity in jobs available in the

national economy.  *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790

F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d  Cir. 1979).

   Where a claimant has multiple impairments that may not individually reach the level of

severity necessary to qualify for any one impairment for Listed Impairment status, the

Commissioner nevertheless must consider all of the impairments in combination to determine

whether, collectively, they meet or equal the severity of a Listed Impairment. *Bailey v. Sullivan*,

885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary

shall consider the combined effect of all of the individual's impairments without regard to

whether any such impairment, if considered separately, would be of such severity").

It is well established that state agency consultants are considered to be "highly qualified

physicians and psychologists who are also experts in Social Security disability evaluation.

Therefore, administrative law judges must consider findings of State agency medical and

psychological consultants or other program physicians or psychologists as opinion evidence,

except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. §

404.1527 (f)(2)(I).  However, the opinions of state agency consultants constitute substantial

evidence in support of the ALJ's findings provided they are supported by substantial record

evidence.

**IV.    The ALJ's Determination**

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the

Act, after an analysis of each of the five steps of the sequential evaluation process.  In making

this determination, the ALJ concluded that : (1) Plaintiff did not engage in substantial gainful

activity during the period from her alleged onset date of January 1, 2002; (2) Plaintiff suffered

from a severe combination of impairments: mood disorders, mild mental retardation, and

bilateral foot tendonitis; (3) Plaintiff's combination of impairments did not satisfy the criteria of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d),

404.1526, 416.920(d), 416.925 and 416.926); (4) Plaintiff had the residual functional capacity to perform medium exertional work activities that do not require the following: making complex decisions, following detailed instructions, adapting to frequent changes in the work-setting, coping with stress in emergency situations, or dealing with the public; (5) Plaintiff was unable to perform any past relevant work; and (6) Plaintiff could perform jobs that exist in the national economy based upon her age, education, work experience, and residual functional capacity.  R. 6 at 19 - 30.

**V.      Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a *de novo* review of the decision of the Commissioner or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence.  42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

Plaintiff makes several arguments in challenging the ALJ's disability determination. Plaintiff challenges the ALJ's determinations at steps three, four, and five of the sequential evaluation process.  *See generally*, Doc. ## 13 & 14.  The Court, however, finds that the ALJ's determinations at each of these steps are supported by substantial evidence and will therefore affirm the ALJ's determination.

**A.      Substantial evidence supports the step 3 determination that Plaintiff did not meet or equal § 12.05C of the Listing of Impairments.**

At step three of the sequential evaluation process, the ALJ found that Plaintiff does not

have an impairment or combination of impairments that meets or medically equals one of the

listed impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  Plaintiff argues that the ALJ erred in

determining that Plaintiff's severe impairment did not meet the criteria of Listing 12.05C (mental

retardation) by rejecting the treating source and medical source opinions and other probative

evidence, namely evidence of her Full Scale Standard IQ score of 69.  The Court finds no such

error.

In order to be considered disabled at step three of the sequential evaluation process, a

claimant's impairment or impairments must meet or medically equal an impairment listed in the

Regulations.  *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).  "'For a claimant to show

that his impairment matches a listing, it must meet *all* of the specified medical criteria. An

impairment that manifests only some of those criteria, no matter how severely, does not qualify.'"

*Williams*, 970 F.2d at 1186 (*quoting Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990)) (emphasis

in original).

More specifically, in order to establish a disability under § 12.05C, a claimant must

satisfy the capsule definition of § 12.05, as well as the two criteria of § 12.05C.  The listing for

the diagnostic category of mental retardation, § 12.05, provides in relevant part:

> 12.05.  Mental retardation: Mental retardation refers to significantly subaverage general
> intellectual functioning with deficits in adaptive functioning initially manifested
> during the developmental period: i.e., the evidence demonstrates or supports onset
> of the impairment before age 22.  The required level of severity for this disorder is
> met when the requirements in A, B. C, or D are satisfied.
>
> ...
> C.      A valid verbal, performance, or full scale IQ of 60 through 70 and a

physical or other mental impairment imposing an additional and significant work-related limitation of functioning; or

D.    A valid verbal, performance or full scale IQ of 60 through 70, resulting in at least two of the following:

    1.    Marked restrictions of activities of daily living; or

    2.    Marked difficulties in maintaining social functioning; or

    3.    Marked difficulties in maintaining concentration, persistence, or pace; or

    4.    Repeated episodes of decompensation, each of extended duration.

The ALJ determined that while Plaintiff's full scale IQ score was below 70 prior to attaining the age of 22, Plaintiff failed to establish the requisite additional and significant work-related limitation of functioning.  R. 6 at 23.  Upon review of the decision of the ALJ, it is clear that substantial evidence supports the decision.  In reaching her determination, the ALJ considered the evidence of record and further articulated the basis of her decision.  Specifically, she noted that Plaintiff's educational history (Plaintiff graduated from high school in 1997 ranked 79 out of 159), her developmental history (Plaintiff's learning support classes were discontinued after she completed the ninth grade; she subsequently "did very well" in 10th grade, attaining a grade point average of 3.25), and her work/social history (in addition to being employed following high school, Plaintiff lives with her boyfriend and cares for her two daughters) demonstrate that she failed to prove an additional and significant work-related limitation of functioning.  *Id.*

Similarly, the ALJ further considered whether Plaintiff satisfied the requirements of two of the four criteria in § 12.05D: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  In only one category did Plaintiff have

9

"marked" difficulties.  Taken together, substantial evidence supports the decision that Plaintiff's condition does not meet or equal § 12.05C of the Listings of Impairments.

### B. Substantial evidence supports the ALJ's Residual Functional Capacity determination.

Plaintiff challenged the ALJ's findings and conclusions with respect to her residual functional capacity (RFC).  Specifically, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's exertional and non-exertional limitations in determining her residual functional capacity when the ALJ considered her subjective complaints to be not entirely credible.  In making an RFC assessment, an ALJ must do more than simply state factual conclusions, she must make specific findings of fact to support her ultimate findings.  *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).  The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially in cases where a claimant's treating physician testified.[2]  *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).  She must also give serious consideration to a claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence.  *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work.  *E.g., Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v.*

---

[2] No treating physician testified for the Plaintiff at the hearing.  As noted above, the two witnesses at the hearing were an impartial medical expert/board certified psychiatrist and an impartial vocational expert.

*Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolosky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999)(*relying on Dobrowolsky*).

When a medical impairment that could reasonably cause the alleged symptoms exist, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which she is disabled by it. *See* 20 C.F.R. § 404.1529(c); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). However, as the Defendant accurately notes, the Third Circuit has acknowledged that the record may contain conflicting medical evidence. *See Cotter*, 642 F.2d at 705 (stating that "when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them.") The sole restriction on the ALJ's assessment of the evidence is that the "ALJ cannot reject evidence for no reason or the wrong reason." *Id.* At 706.

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be reflected in her decision. *See Cotter*, 642 F.2d at 705. The Third Circuit has stated, "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's

11

ability to work." *Schaudeck*, 181 F.3d at 433.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain without contrary medical evidence.  *Chrupcala v. Heckler*, 829 F.2d 1269,1275-76 (3d Cir. 1987); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W,D.Pa. 1998).  In making her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain her reasons for rejecting such supporting evidence.  *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000).

With respect to the credibility determination of Plaintiff's complaints of pain, the record makes clear that the ALJ carefully considered the entire record and applied the proper analysis in determining Plaintiff's maximum residual functional capacity.  *See*, *e.g.*, R. 6 at pp. 24-28.  In fact, the ALJ's decision specifically considered Plaintiff's description of her symptoms in light of the objective medical evidence.  To that end, the ALJ noted that Plaintiff did not take narcotic medication, she did not receive physical therapy, she had not been referred to pain management treatment, she had not sought emergency room treatment for pain, she did not require an assistive walking device, and no medical source of record had recommended "or even insinuated" the need for surgical intervention, facts to which Plaintiff offered no dispute.  *Id.*  Instead, Plaintiff argues, "Many of Ms. Oakes' complaints of pain were corroborated by the motor nerve conduction study objectively indicating peripheral sensory motor polyneuropathy, axonal type. [R 6-4 at 392]"  This evidence referenced by Plaintiff was specifically addressed by the ALJ in her findings.  In relevant part, the decision noted:

12

An electromyography and nerve conduction studies of her lower extremities taken in August 2004 reported findings consistent with polyneuropathy (Exhibit 14F) [R. 6-4 at 390-91]. However, because Dr. Aggarwal could not appreciate neurological deficits during his clinical examination, he ordered the claimant to repeat this test. Unlike the prior study, the November 2, 2004, test results did not record objective evidence of peripheral neuropathy (Exhibit 15F) [R. 6-4 at 392-96]. The claimant has, nonetheless, sought medical treatment with Dr. Bajwa for bilateral foot discomfort over the past several years. Dr. Bajwa's progress notes make reference to a diagnosis of tendonitis of the feet (Exhibit 4F)[R6-2 at 144]. Whether the claimant's lower extremity symptoms are related to polyneuropathy or tendonitis, she has sought medical treatment for bilateral foot discomfort. Accordingly, I have restricted the claimant's maximum residual functional capacity to no greater than the medium exertional level.

R. 6 at 25-6. As such, the ALJ properly considered the evidence to which Plaintiff now refers, and determined that, taken as a whole, Plaintiff's bilateral foot discomfort restricts Plaintiff's maximum RFC to that of no greater than the medium exertional level.

Plaintiff argues the pattern of consistency with respect to her complaints regarding abdominal pain. Doc # 14 at p. 6. However, the record clearly reveals, with the same level of consistency, the lack of any laboratory findings which demonstrate the existence of a medically determinable physical impairment. In fact, the record demonstrates a history of diagnostic testing of Plaintiff's lower back, pelvis, and hips dating back to 1998 indicating little more than normal results. *See, e.g.,* R, 6-2, at 145, 146, 149, 150 (the results of a CT scan of Plaintiff's abdomen and pelvis dated July 18, 2002, noting in relevant part "I see no evidence of an abdominal or pelvic mass of abnormal fluid collection. In addition, there is no evidence of a renal or ureteral calculus or hydronephrosis. This exam does not explain this patient's complaint of abdominal pain."), 151, 152, 153, 154, 155, 156, 158, 161, and 162. As the ALJ correctly states in the decision, "According to SSR 96-4p, no symptom or combination of symptoms can be the basis for a finding of disability no matter how genuine the individual's complaints may appear to be,

unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." R, 6 at 26. For this Court to find otherwise would require an impermissible exercise of re-weighing the evidence by crediting Plaintiff's subjective complaints and disregarding the objective medical evidence relied upon by the ALJ, which it will not do.

Plaintiff also challenges her RFC of medium exertional work as not being supported by the evidence, particularly given her Global Assessment of Functioning Scale ("GAF") score of 50. Doc. # 14, pp. 14-15. Plaintiff cites the report of her expert Dr. Hahn for purposes of establishing that vocationally, her emotionality and her response to treatment would limit any vocational interest or pursuit, that her low ability and difficulties limit her vocational opportunities, and that her employability is limited by her physical conditions.

The ALJ must consider all medical evidence in the record and provide adequate explanation for disregarding or rejecting evidence; such explanation is especially important when testimony of the claimant's treating physician is rejected. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). The ALJ's reason for rejecting a treating physician's opinion must be based upon contradictory medical evidence, not on the ALJ's own credibility judgments, speculation, or lay opinion. *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). In this case, the ALJ considered the reports authored by Dr. James E. Williams[3], Dr. Edward Zuckerman[4], and Dr. William O. Hahn in light of the testimony of Dr.

---

[3] On November 4, 2003, Dr. Williams evaluated Plaintiff's intelligence. Plaintiff was 24 years old at the time. R. 6-3 at 271-275. Plaintiff had a verbal IQ of 67, a performance IQ of 75, and a full scale IQ of 68. *Id.* at 272. Among other things, Dr. Williams assessed that Plaintiff had a slight restriction in understanding, remembering, and carrying out short, simple instructions, and a marked limitation in understanding, remembering, and carrying out detailed

Janosko.  In making her determination, the ALJ articulated why she discounted portions of the

opinions of Dr. Williams and Dr. Hahn, and credited the opinions of Dr. Zuckerman and Dr.

Janosko.  As just one example of the weight given to the testimony of Dr. Janosko over the

opinions of either Dr. Hahn or Dr. Williams, the ALJ noted:

> Dr. Janosko testified, he had no reason to question Dr. Hahn's Global Assessment
> Functioning (GAF) score of 50 ... although he stressed the fact that Dr. Hahn's GAF
> assessment was merely based on one isolated contact or consultive evaluation with
> the claimant in November 2006.  Furthermore, Dr. Janosko pointed out that a GAF
> assessment would be more valid if the claimant's overall clinical observations could
> have been viewed over a period of time in the continuity of a clinical setting. ...
> Counsel cites to the Diagnostic and Statistical Manual of Mental Disorders, Fourth
> Edition, for the proposition that Dr. Hahn's opinion of the claimant's GAF of 50
> constitutes a serious impairment in social and occupational functioning...  In this
> case, the claimant's GAF score is based merely on an isolated contact with the
> claimant and by itself is not an exertional or nonexertional vocational factor suitable
> for a residual functional capacity profile.  Rather, it is an indication that the
> identifiable impairments may exist and need to be evaluated.  The residual functional
> capacity adopted herein has properly assessed and considered all of the claimant's
> limitations, based upon the record as a whole.

> Dr. Janosko also compared and contrasted Dr. Hahn's psychological evaluation of
> November 2006 with the previous consultative evaluation performed by Dr. Williams
> just three years earlier in November 2003... In particular, Dr. Janosko observed that
> Dr. Williams diagnosed the claimant with an adjustment disorder with depressive
> features.  However, by November 2006, the claimant's adjustment disorder had
> reportedly developed into major depression.  Dr. Janosko opined that these two
> diagnoses are significantly different.  Major depression is much more severe than an
> adjustment disorder.  Based on his medical experience as a psychiatrist, he further
> testified that if an individual's Axis I diagnosis changes from adjustment disorder to
> major depression, he would expect such an individual to have a history of mental
> health care treatment, which, in this case, is conspicuously absent. ... My assessment

---

instructions and in making simple, work-related judgments.  *Id.* at 274.

[4]  On December 10, 2003, Dr. Zuckerman, a clinical psychologist and expert in disability
assessment, completed a Psychiatric Review Technique form regarding Plaintiff.  R. 6-3 at 279-
92.  Among other things, Dr. Zuckerman assessed Plaintiff's mental impairments as resulting in
mild restrictions in activities of daily living, social functioning, and concentration, persistence, or
pace.  *Id.* at 289.

is further supported by the findings Edward Zuckerman, Ph.D., a State agency clinical psychologist.

Dr. Zuckerman has opined that the claimant's basic memory is intact.  He further believes she is able to work within a schedule and at a consistent pace, make simple decisions and carry out short instructions, sustain an ordinary routine without special supervision, and perform repetitive work activities without constant supervision. According to Dr. Zuckerman, the claimant appears to be self-sufficient.

R. 6 at 27-8.  Accordingly, the ALJ gave adequate explanations for reconciling the various medical assessments in determining Plaintiff's RFC.  Noting the existence of non-exertional mental limitations commensurate with mild mental retardation, the ALJ restricted Plaintiff from work activities which involve complex decisions, exposure to the general public, frequest changes in work-setting, detailed instructions, and coping with stress in emergency situations.

### C.     Substantial evidence supports the ALJ' determination at step five of the sequential evaluation process.

Step five of the sequential evaluation process required that the Commissioner determine whether there are jobs in the economy that a claimant is capable of performing, based on an assessment of the claimant's residual functional capacity, age education and work experience.  20 C.F.R. §404.1520(a)(4)(v); 20 C.F.R. §404.1560(c)(2).  The Commissioner bears the burden at this stage to show that there are jobs the claimant can perform. *Id.*; *Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004).  The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step five is frequently based in large measure on testimony provided by the vocational expert, as it was in this matter.  *Rutherford*, 99 F.3d at 553, *citing Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)(citations omitted).  Where a hypothetical question to the vocational expert accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as

uncontradicted on the medical record, the expert's response as to the existence of jobs in the

national economy which the claimant is capable of performing may be considered substantial

evidence in support of the ALJ's findings as to claimant's residual functional capacity.  *See, e.g.,*

*Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002)(*citing Podedworny*, 745 F.2d at 218, *and*

*Chrupcala v. Heckler*, 829 F.2d 1276 (3d Cir. 1987); *see also, Plummer*, 186 F.3d at 428 (factors

to be considered in formulating hypothetical questions include medical impairments, age,

education, work experience, and residual functional capacity); *Boone*, 353 F.3d at 205-06 ("At

the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a

vocational expert.'") Because the hypothetical question posed to a vocational expert "must reflect

all of a claimant's impairments," *Chrupcala*, 829 F.2d F.2d at 1276, where there exists on the

record "medically undisputed evidence of specific impairments not included in a hypothetical

question to a vocational expert, the expert's response is not considered substantial evidence."

*Podedworney*, 745 F.2d at 218.

      Here, the ALJ asked the vocational expert the following hypothetical at the administrative

hearing:

> Q:    Okay.  Now let's go to the assumption.  Assume that I find the claimant is
> 27 years old and has a twelfth grade education.  Assume further that I find
> she can perform medium work and is further limited by the following.
> The first one would be to lift 25 pounds frequently, and on occasions 50
> pounds; the second to make complex decisions; the third one, to follow
> detailed instructions; the fourth one, to adapt to frequent changes in a work
> setting; the fifth one, to cope with the stress in emergency situations; and
> the sixth one, to deal with the public.  And with these limitations, could
> this individual perform her past relevant work or any other job in the
> national economy?  What would be your response?

> A:    My response would be she can not perform past relevant work, Your
> Honor.

Q:      Okay.

A:      But I believe, given the limitations, that there is work for such an
        individual ...

R. 6 at 42-3.  The vocational expert proceeded to identify the following representative examples

of jobs in the national economy for individuals with these limitations: hand packers, vehicle

washers and equipment cleaners, and janitors and cleaners.  *Id.*  The Court finds that substantial

evidence supports the ALJ's determination at step five, given the testimony of the vocational

expert at the administrative hearing, including the response to  the hypothetical posed by the ALJ

which adequately addressed Plaintiff's limitations.  The testimony of a vocational expert, whose

expertise Plaintiff's counsel stipulated to, is substantial evidence from which the ALJ could

determine that Plaintiff is not disabled at step five of the sequential evaluation process.

Moreover, as discussed above, the ALJ's residual functional capacity determination is supported

by substantial evidence.  Therefore, the hypothetical question including all of Plaintiff's

limitations found in the residual functional capacity determination is adequate. *See Rutherford*,

399 F.3d at 554 n. 8 (noting that attacks on a hypothetical question very often "boil down to

attacks on the [residual functional capacity] assessment itself").  Indeed, the ALJ's hypothetical

included the very limitations noted in the report of Dr. Zuckerman, therefore, it adequately

reflected the limitations reflected in the record medical evidence.  *Cf Burns v. Barnhart*, 312 F.3d

113, 123 (3d Cir.2002).

**IV.     Conclusion**

        The Court has reviewed the ALJ's findings of fact and decision, and determines that her

finding that Plaintiff was not disabled under the Social Security Act is supported by substantial

evidence.  Accordingly, the Court will grant the Commissioner's Motion for Summary Judgment,

deny Plaintiff's Motion for Summary Judgment and enter judgment in favor of the

Commissioner.

An appropriate Order follows.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

October  5 , 2009

cc:     E. David Harr
        Email: Dharresq@aol.com

        Jessica Smolar, Esquire
        Email: jessica.smolar@usdoj.gov

19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DULCINA M. OAKES,                          )
                                           )
                    Plaintiff,             )          2:08-cv-1547
          v.                               )
                                           )
MICHAEL J. ASTRUE,                         )
COMMISSIONER OF SOCIAL SECURITY,           )
                                           )
                    Defendant.             )

**ORDER OF COURT**

AND NOW, this  5th  day of October, 2009, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

      1.     Plaintiff's Motion for Summary Judgment (Document No. 13) is
           **DENIED**.

      2.     Defendant's Motion for Summary Judgment (Document No. 15) is
           **GRANTED**; AND

      3.     The Clerk of Court is to docket this case closed forthwith.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:   E. David Harr
       Email: Dharresq@aol.com

       Jessica Smolar, Esquire
       Email: jessica.smolar@usdoj.gov